IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DARRIN TIPPENS,
      Plaintiff,

      v.

                              Case No. 2:05-CV-421
                              JUDGE EDMUND A. SARGUS, JR.
AIRNET SYSTEMS, INC.,           Magistrate Judge Mark R. Abel
      Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of the Defendant's Motion for Summary Judgment. (Doc. #13). For the reasons that follow, the motion is granted in part and denied in part.

## I.

Plaintiff, Darrin Tippens ["Plaintiff"], brings this action for alleged violation of the Family and Medical Leave Act ["FMLA"], 29 U.S.C. § 2617, *et seq.*, against his former employer, Defendant AirNet Systems, Inc., ["AirNet"]. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

Plaintiff was employed by Defendant AirNet as a Janitor from September 1987 until he was terminated from employment on January 14, 2005. Defendant AirNet is a private airline service that provides delivery of time-sensitive packages in the United States. Plaintiff's termination arises from his alleged exhaustion of medical leave time under the FMLA.

On June 3, 2004, Plaintiff commenced a leave of absence from employment to undergo an emergency heart procedure. Plaintiff informed his supervisor, Dan Walker, of this event prior

to the commencement of leave. (*Tippens Depo.* at 28-29). Lysa Wiederman , Benefits Manager

for Defendant AirNet, called Plaintiff at some point after Plaintiff commenced leave to inform

him that the time would be counted as FMLA leave time. (*Id.* at 33). Plaintiff also received a

letter, dated June 8, 2004, informing Plaintiff of AirNet's policy with respect to leave. (Exhibit

2, *Tippens Depo.*). Plaintiff claims that it was his desire to use accumulated paid vacation days

for his leave. Plaintiff returned to work on June 22, 2004. (*Tippens Affidavit* at ¶¶ 2, 4).

On September 29, 2004, Plaintiff commenced leave to undergo emergency eye surgery.

(*Id.* at ¶ 6). Plaintiff informed his supervisor of the need to take leave and that, if all went well,

he anticipated returning to work in two weeks. (*Tippens Depo.* at 40). Plaintiff's surgery was

necessitated by a complication from diabetes. The surgery did not go as anticipated and Plaintiff

suffered a total loss of vision in his right eye. (*Id.* at 41). Plaintiff underwent a second surgery

on his eye approximately four to six weeks after the first surgery. (*Id.* at 42). Plaintiff

experienced life-threatening complications after the second surgery which resulted in Plaintiff

lapsing into a diabetic coma. (*Id.*). Plaintiff was eventually released from the hospital but

continued to suffer complications from his diabetes as well as some loss of vision in his eye. (*Id.*

at 47). On December 9, 2004, Plaintiff's physician, Dr. Alan J. Rehmar, provided Plaintiff with

a Disability Certificate indicating that Plaintiff was under Dr. Rehmar's care from October 1,

2004 to December 9, 2004 and was "totally incapacitated during this time." (Exhibit 4, *Tippens

Depo.*). The certificate indicated that Plaintiff was able to return to work as of December 9, 2004

with no restrictions. (*Id.*).

On December 3, 2004, Defendant AirNet sent Plaintiff a letter outlining his "current

status with AirNet due to your current medical leave." (Exhibit 5, *Id.*). The letter states, in

relevant part:

> On June 3, 2004, you went out on a medical leave which was covered under the Family Medical Leave Act.  This Act allows team members up to 12 weeks of unpaid job protected leave.  Your 12 weeks of Family Medical Leave was exhausted on December 3, 2004.  Effective immediately we will no longer hold your position open.  Upon your return to active employment, you will be eligible to apply for any open position for which you are qualified.
>
> We have placed you on an inactive leave of absence status and will continue your medical and disability insurance benefits at this time.  You will continue to be responsible for your portion of the health insurance premiums, remitting the premium to AirNet, 3939 International Gateway, Columbus, Ohio 43219.

(*Id.*).  Immediately after receiving this letter, Plaintiff left a telephone message for Jerry Herrick, an employee in the Human Resources Department, at his home, on December 4, 2004.  (*Tippens Depo.* at 49).  Herrick returned the call on Monday December 6, 2004, together with Wiederman and Walker.  (*Id.* at 50).  Plaintiff was advised that he should apply for another position if he so desired.  (*Id.* at 51).

On December 30, 2004, AirNet sent Plaintiff another letter, which states, in relevant part:

> On December 15, 2004, we received your release to duty effective 12/9/04.  Per policy, you are free to apply for any posted position for which you are qualified.  To date, we have not received any communication in this regard from you.  You have until 1/14/05 to do so.  If, as of the close of business on this date, we have not received any application for a posted position from you, your employment will be terminated.
>
> Please note that in the previous letter we sent you were to contact us regarding your insurance.  We have changed insurance carriers effective 1/15/05 and you have not contacted us regarding your enrollment.  As a result, you have not been enrolled in our insurance.

(Exhibit 6, *Id.*).

Plaintiff did not apply for any posted jobs and his employment was terminated effective

3

January 14, 2005.   Plaintiff brings this action claiming that the termination was in violation of

the FMLA.  Defendant moves for summary judgment on Plaintiff's claim.

## II.

The procedure for considering whether summary judgment is appropriate, is found in Fed.

R. Civ. P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions,
> answers to interrogatories and admissions on file, together with the affidavits, if
> any, show that there is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party.  *Adickes v.*

*Kress & Co.*, 398 U.S. 144, 158-59 (1970).  Summary judgment will not lie if the dispute about a

material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is appropriate however, if the opposing party fails to make a showing

sufficient to establish the existence of an element essential to that party's case and on which that

party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty*

*Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice,"

ushering in a "new era" in summary judgments.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472,

1476 (6th Cir. 1989).  The court in *Street* identifies a number of important principles in new era

summary judgment practice.  For example, complex cases and cases involving state of mind

4

issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

### III.

"The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir.2005) (quoting 29 U.S.C. § 2612(a)(1)(D)). A "serious health condition," is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

There are two distinct theories for recovery under the FMLA: (1) the "entitlement" or

"interference" theory arising from 29 U.S.C. § 2615(a)(1); and (2) the "retaliation" or

"discrimination" theory arising from 29 U.S.C. § 2615(a)(2).  Plaintiff alleges that there are facts

to support relief under both theories.  The Court discusses the "interference" theory first.

### 1. Interference Theory.

29 U.S.C. § 2615(a)(1) provides that "[i]t shall be unlawful for any employer to interfere

with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this

subchapter."  In order to prevail on a claim for violation of this provision, the Plaintiff must show

that he was denied an entitlement under the FMLA.  *Hoge v. Honda of America Mfg., Inc.*, 384

F.3d 238, 244 (6th Cir. 2004) (citations omitted).  An employer may violate § 2615(a)(1)

regardless of the intent behind its conduct.  *Id.*   With respect to the particular elements for the

claim, the Plaintiff must show: (1) he is an "[e]ligible employee," 29 U.S.C. § 2611(2); (2) the

defendant is an "[e]mployer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under

the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to

take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to

which he was entitled.  *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

There is no dispute that Plaintiff satisfies the first four elements outlined above.  Plaintiff

is an "eligible employee" as defined in 29 U.S.C. § 2611(2) because he worked over 1250 hours

the prior twelve months before commencement of leave on June 16, 2003.  Second, Defendant is

an "employer" as defined in 29 U.S.C. § 2611(4) because it employed over fifty employees.

Third, Plaintiff was entitled to take leave beginning in September 2004 for a "serious health

condition."  Fourth, Plaintiff gave notice to Defendant of his need to undergo eye surgery in

September 2004.  With respect to the fifth element, Plaintiff argues that he was not provided with proper information to analyze his FMLA leave entitlement.  Plaintiff claims that this deficiency ultimately led to the failure to restore Plaintiff to the same or equivalent position in December 2004.

Plaintiff asserts that the leave he took from June 3-21, 2004 should not have been counted towards FMLA leave because Plaintiff desired to use accrued vacation time for his absence.  The Defendant argues that the time was properly counted.  Defendant first points to its FMLA Policy, which states, in part:

> FMLA leave will run concurrently with any other Company benefits should the situation meet the guidelines of FMLA (i.e., short or long term disability, workers' compensation.).
> Medical certification (Certificate of Healthcare Provider Form) will be required for any type of FMLA Leave.  Team members who are off work due to a FMLA related condition are required to use all available sick, vacation or other available time, for any unpaid FMLA leave.

(Exhibit 1, *Tippens Depo.*).  Defendant also points to the Department of Labor form materials sent to Plaintiff on June 8, 2004.  The form states that Plaintiff's absence beginning on June 3, 2004 is "eligible" for leave under the FMLA and that the requested leave "will" be counted against the annual FMLA leave entitlement.  (Exhibit 2, *Id.*).  The form also states that Plaintiff "will" be required to provide medical certification of a serious health condition by June 23, 2004.  (*Id.*).  The form states at paragraph 4:

> You may elect to substitute accrued paid leave for unpaid FMLA leave.  We "will" require that you substitute accrued paid leave for unpaid FMLA leave.  If paid leave will be used, the following conditions will apply: (Explain)
> You will be required to use available sick and/or vacation (up to a maximum of 40 hours negative) for any unpaid time.

7

(*Id.*)[1]. Further, Plaintiff acknowledges that Lysa Wiederman , Benefits Manager for Defendant AirNet, called him on June 3, 2004 to inform him that the time would be counted as FMLA leave time. (*Tippens Depo.* at 33).

It is undisputed that Plaintiff did not provide a medical certification for the June 2004 absence. Defendant contends that this failure does not prohibit Defendant from designating the leave as FMLA leave time. Plaintiff asserts that the accompanying regulations contemplate that if medical certification is not provided, the absence is not counted as FMLA leave. 29 C.F.R. § 825.311(b) provides:

> § 825.311 What happens if an employee fails to satisfy the medical certification and/or recertification requirements? . . .
> (b) When the need for leave is not foreseeable, or in the case of recertification, an employee must provide certification (or recertification) within the time frame requested by the employer (which must allow at least 15 days after the employer's request) or as soon as reasonably possible under the particular facts and circumstances. In the case of a medical emergency, it may not be practicable for an employee to provide the required certification within 15 calendar days. If an employee fails to provide a medical certification within a reasonable time under the pertinent circumstances, the employer may delay the employee's continuation of FMLA leave. If the employee never produces the certification, the leave is not FMLA leave.

29 C.F.R. § 825.312(b) provides:

> § 825.312 Under what circumstances may a covered employer refuse to provide FMLA leave or reinstatement to eligible employees? . . .
> (b) If an employee fails to provide in a timely manner a requested medical certification to substantiate the need for FMLA leave due to a serious health condition, an employer may delay continuation of FMLA leave until an employee submits the certificate. (See §§ 825.305 and 825.311.) If the employee never produces the certification, the leave is not FMLA leave.

In the Court's view, the foregoing regulations cannot be construed as a means to thwart

---

[1]The explanation portion is handwritten.

Defendant's FMLA policy.  Despite Plaintiff's desire to use his accrued leave rather than FMLA leave, it is clear that the FMLA allows an employer the power to require an employee to substitute any accrued leave for leave provided under the FMLA. § 2612(d)(2)(B). The employer can permit an employee to use FMLA leave and other accrued leave sequentially or may require that the two run concurrently. *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1205 (11th Cir.2001)[2].  In this case, Defendant clearly advised Plaintiff that accrued leave and FMLA leave would run concurrently.  The fact that Plaintiff desired to use the time sequentially is of no moment.

Further, the fact that Plaintiff did not submit the medical certification required "is fatal to a claim of FMLA interference." *Carpenter v. Permanente*, No. 1:04CV1689, 2006 WL 2794787 at *13 (N.D. Ohio Sept. 27, 2006) (O'Malley, J.), citing *Gulan v. Fed. Reserve Bank of Cleveland*, 2003 WL 22047802 (N.D.Ohio Aug. 27, 2003); *Harrington v. Boysvill of Michigan, Inc.*, 145 F.3d 1331 (6th Cir.1998).  The Defendant was able to "conditionally grant--and pay--an employee FMLA leave with the understanding that a final determination of FMLA leave will not occur until the employee can show a valid medical certification." *Id.*  The Plaintiff cannot, however, simply fail to submit the medical certification and successfully assert an interference claim.

As for Plaintiff's absence in September 2004, Plaintiff claims that Defendant failed to give him notice that the leave would be designated as FMLA leave.  Plaintiff points to 29 C.F.R.

---

[2]29 C.F.R. § 825.207(a) provides:
(a) Generally, FMLA leave is unpaid. However, under the circumstances described in this section, FMLA permits an eligible employee to choose to substitute paid leave for FMLA leave. If an employee does not choose to substitute accrued paid leave, the employer may require the employee to substitute accrued paid leave for FMLA leave.

9

§ 825.208 in this regard.  The regulation provides that, "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section."  According to Plaintiff, had he known that his absence would exhaust his leave period, he would have attempted to return to work sooner.  The Defendant concedes that it failed to designate Plaintiff's absence beginning in September 2004 as FMLA leave but, Defendant argues that because Plaintiff's physician described Plaintiff as "totally incapacitated" until December 9, 2004 (Exhibit 4, *Tippens Depo.*), the failure to designate is of no significance.  Defendant relies on the Supreme Court's decision in *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002), in support of this argument.

In *Ragsdale*, the Defendant employer's leave policy was more generous than the 12 week minimum required by the FMLA.  The Plaintiff exhausted her 30 week absence under the Defendant's policy but claimed that she was entitled to an additional 12 weeks under the FMLA.  Plaintiff specifically alleged that the Defendant's failure to notify her that 12 weeks of absence would count as FMLA leave amounted to a violation of 29 C.F.R. § 825.700(a), which states that if an employee takes medical leave "and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement."  The Supreme Court concluded that this regulation was in conflict with the statute and the Court invalidated the regulation.  The Court stated:

> Ragsdale has not shown that she would have taken less leave or intermittent leave if she had received the required notice.  As the Court of Appeals noted--and Ragsdale did not dispute in her petition for certiorari-- "Ragsdale's medical condition rendered her unable to work for substantially longer than the FMLA twelve-week period." 218 F.3d, at 940.  In fact her physician did not clear her to work until December, long after her 30-week leave period had ended.  Even if Wolverine had complied with the notice regulations, Ragsdale still would have

taken the entire 30-week absence. Blind to this reality, the Secretary's provision required the company to grant Ragsdale 12 more weeks of leave--and rendered it liable under § 2617 when it denied her request and terminated her.

The challenged regulation is invalid because it alters the FMLA's cause of action in a fundamental way: It relieves employees of the burden of proving any real impairment of their rights and resulting prejudice. In the case at hand, the regulation permitted Ragsdale to bring suit under § 2617, despite her inability to show that Wolverine's actions restrained her exercise of FMLA rights. Section 825.700(a) transformed the company's failure to give notice--along with its refusal to grant her more than 30 weeks of leave--into an actionable violation of § 2615. This regulatory sleight of hand also entitled Ragsdale to reinstatement and backpay, even though reinstatement could not be said to be "appropriate" in these circumstances and Ragsdale lost no compensation "by reason of" Wolverine's failure to designate her absence as FMLA leave. By mandating these results absent a showing of consequential harm, the regulation worked an end run around important limitations of the statute's remedial scheme.

*Id.* at 90-91.

*Ragsdale* did not address the validity of 29 C.F.R. § 825.208, but, as one court has noted, its status is "tenuous at best" after the *Ragsdale* decision. *Roberson v. Cendant Travel Services, Inc.*, 252 F.Supp.2d 573, 577 (M.D. Tenn. 2002). In *Roberson,* the Plaintiff disputed her employer's calculation of FMLA leave time, and relied on § 825.208 in contending that the Defendant's failure to give notice of the designation of leave taken as FMLA leave[3] prejudiced her. The district court granted the Defendant's motion for summary judgment, finding that even if Plaintiff's dates were credited, she could not show that she was injured as a result of the Defendant's designation of leave because the medical evidence was undisputed that Plaintiff was unable to return to work[4].

_____

[3]Plaintiff became ill during a vacation and part of the time was counted by her employer as FMLA leave.

[4]The district court conducted a thorough analysis of pertinent Sixth Circuit authority on the issue, all of which was decided prior to *Ragsdale. See Cehrs v. Northeast Ohio Alzheimer's Research Center,*

This Court agrees with the analysis applied in *Roberson* that, although not addressing 29 C.F.R. § 825.208, *Ragsdale* makes clear that Plaintiff must show some prejudice as a result of the Defendant's failure to provide notice of designation of leave as FMLA time. Similar to the Plaintiff in *Roberson*, Plaintiff in this case fails to come forward with evidence in this regard. The undisputed medical evidence shows that Plaintiff was totally incapacitated from September 29, 2004 to December 9, 2004. Indeed, Plaintiff was in a coma for part of this time. Plaintiff's 12 week period of leave expired on December 3, 2004. Plaintiff was advised of this occurrence and was also advised that he could apply for another available position. In view of the undisputed evidence of Plaintiff's inability to return to work prior to the expiration of leave, the Court finds that Defendant is entitled to summary judgment on Plaintiff's interference theory under the FMLA.

### 2. Retaliation Theory.

Plaintiff also claims that the Defendant's failure to reinstate him to employment amounts to unlawful retaliation under the FMLA. As the Defendant points out, although Plaintiff failed to

---

155 F.3d 775, 785 (6th Cir. 1998) (holding that when there is a dispute over dates of FMLA leave but the employee is clearly unable to return to work during that period, "it would be elevating form over substance to say that the effective termination date chosen by [the employer] is meaningful to the Court's analysis under the FMLA."); accord *Hicks v. Leroy's Jewelers, Inc.*, 2000 WL 1033029 (6th Cir. July 17, 2000); *Covucci v. Service Merchandise Co., Inc.*, 1999 WL 115531 (6th Cir. Feb. 8, 1999).

However, in *Plant v. Morton Int'l, Inc.*, 212 F.3d 929 (6th Cir. 2000), the Sixth Circuit found that a plaintiff was not precluded from bringing a FMLA claim although he was unable to work during the relevant 12 week period because the employer failed to give notice that it was counting paid leave as FMLA leave time. The court distinguished *Cehrs* on the basis that the employer failed to notify the employee that paid leave would be counted. In contrast to *Plant* is the Sixth Circuit's later decision in *Williams v. Toyota Mfg., Kentucky, Inc.*, 224 F.3d 840, 845 (6th Cir. 2000), *rev'd on other grounds*, 534 U.S. 184 (2002), in which summary judgment for an employer was appropriate because the plaintiff was under work restrictions that would not allow her to return to work in the twelve week period.

plead this theory in his Complaint, he addresses it in opposing Defendant's motion for summary judgment. Defendant's motion specifically addresses a purported claim under the retaliation theory. Since both parties have briefed a claim under the retaliation theory, the Court will consider the same despite Plaintiff's failure to include the theory in his Complaint[5].

In *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507-08 (6th Cir. 2006), the Sixth Circuit held that while "[t]he employer's intent is not a relevant part" of a FMLA interference claim, it is an "integral part" of the analysis of a retaliation claim. "What makes the employment decision unlawful under the [retaliation] theory is the motive of the employer--namely, that the action was taken because the employee exercised, or complained about the denial of, FMLA-protected rights." *Id.* at 512.

In this case, it is undisputed that the position Plaintiff occupied prior to the exhaustion of FMLA leave was eliminated because Defendant determined that the janitorial services could be performed with the two other positions that remained open. (*Walker Depo.* at 9). Despite Walker's testimony that this was the only reason for the decision to eliminate the position (*Id.*), Plaintiff claims that his taking FMLA leave motivated the employer's action.

The retaliation theory utilizes the familiar *McDonnell Douglas* burden-shifting framework. That is, in order to establish a *prima facie* case for retaliation under the FMLA, Plaintiff must show: (1) he engaged in an activity protected by the FMLA; (2) the exercise of his rights under the FMLA was known to the Defendant; (3) the Defendant thereafter took an

---

[5]The Court notes that the Defendant does not argue that it is prejudiced in any way by Plaintiff's failure to specifically plead a retaliation theory. If the Court were able to discern some prejudice, its decision might be different. *See e.g., Sosby v. Miller Brewing Co.*, No. 05-4629, 2006 WL 3391513 (6th Cir. Nov. 22, 2006).

employment action adverse to Plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990). If the Plaintiff establishes a *prima facie* case for retaliation, the burden of production of evidence shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once this is shown, the Plaintiff, upon whom the burden of persuasion remains, must demonstrate "that the proffered reason was not the true reason for the employment decision." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

In this case, the Court finds that Plaintiff has come forward with evidence sufficient to show a *prima facie* case for retaliation. In response, the Defendant has come forward with a legitimate, nondiscriminatory reason for the action taken, *i.e.*, the elimination of Plaintiff's position. In particular, Defendant concluded that the janitorial services could be adequately served with two positions, rather than three. In order to prove that this was not the real reason for the action, the Plaintiff must show that "the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000).

Plaintiff argues that the proximity of his taking FMLA leave to the decision to eliminate his position, coupled with Defendant's awareness that Plaintiff had exhausted his FMLA leave, creates an issue of fact as to the real reason for the Defendant's action. The Sixth Circuit has held that, while proximity in time is sufficient evidence of a causal connection for purposes of a *prima facie* case of retaliation, "it is not alone sufficient to establish that an employer's legitimate, nondiscriminatory reason for discharge was a pretext." *Heady v. United States*

14

*Enrichment Corp.*, 146 Fed.Appx. 766, 2005 WL 1950793, *4 (6th Cir.2005), citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309,317 (6th Cir. 2001).

Plaintiff cites *Heron v. American Heritage Federal Credit Union*, No. CivA02-CV-7209, 2005 WL 1041193 (E.D. Pa. May 2, 2005), in support of his pretext argument. The Court notes at the outset that the *McDonnell Douglas* burden-shifting framework was not utilized by the court in *Heron.* Nevertheless, the court found a genuine issue of material fact on Plaintiff's FMLA retaliation claim. Plaintiff had been on FMLA leave and when he returned to work, he was told that his position had been eliminated due to company restructuring. Plaintiff was informed that he could apply for another position, at a lower salary. The court denied summary judgment, finding that a genuine issue of material fact existed as to whether there was in fact a restructuring. As the court noted, the record "suggests that no other employees of Defendant were aware of this planned restructuring or were impacted as a result of the changes." *Id.* at *5.

The Court concludes that genuine issues of material fact exist in this case as to whether the Defendant's legitimate, nondiscriminatory reason for Plaintiff's discharge was the real motive for the action taken. The proximity of Plaintiff's FMLA leave to the decision to eliminate his position and no others, coupled with Defendant's awareness that Plaintiff had exhausted his FMLA leave, creates an issue of fact on the issue of pretext. The Defendant employs over fifty employees; the only position eliminated, at least from the record in this case, was that of the Plaintiff. As it relates to a retaliation theory, Defendant's motion for summary judgment is denied.

15

## IV.

The Defendant's Motion for Summary Judgment (**Doc. #13**) is **GRANTED in part and DENIED in part.**

IT IS SO ORDERED.

_____
**DATE**

                                                    3-30-2007
                                          _____
                                          **EDMUND A. SARGUS, JR.**
                                          **UNITED STATES DISTRICT JUDGE**

16